**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR-07-288-M |
| ) | |
| STANLEY DESHAWN VANN, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is defendant's Motion to Dismiss and Suppress Evidence, filed May 20, 2008. On May 29, 2008, the government filed its response. On August 7, 2008, the Court conducted a hearing on the motion to suppress.[1] Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.   Factual Background[2]

On January 20, 2006, at approximately 9:15 p.m., OCPD Officer Kennedy stopped a 1992 Mazda for having a non-working license plate light. The driver of the vehicle was Adrian Lamont Marzette ("Marzette"), and defendant was the passenger. The car was initially signaled to stop near the intersection of Kelham and NE Terrace in Oklahoma City, and the car came to a stop in the driveway at 1624 NE 16th Terrace, defendant's residence.

Marzette exited the vehicle and started to walk to the residence. Kennedy told him to stop and escorted him to his police car. Defendant also exited the car, and Kennedy told him three times

---

[1] At the hearing, Sergeant Greg Kennedy ("Kennedy") of the Oklahoma City Police Department ("OCPD"), Sergeant Jason Edward Blosser ("Blosser") of the OCPD, and Detective Mike Homan of the OCPD testified. The Court finds these witnesses are credible witnesses.

[2] This factual background is based upon the evidence presented at the hearing.

to get back into the car. Defendant then got back into the vehicle, but prior to getting back into the vehicle, he appeared to place something down next to it.

After defendant reentered the vehicle, OCPD Officer Blosser arrived on the scene. Kennedy and Blosser then approached the passenger side of the vehicle. As they approached, the officers saw a liquor bottle which had recently been poured out on the ground. As the officers looked through the passenger window of the car, they observed several shotgun shells in the floorboard and next to the passenger seat. Blosser ordered defendant to step out of the car. Blosser then asked defendant if there was a gun to go with the shells; defendant stated yes; Blosser then asked where the gun was located, and defendant stated that it was under his seat. Blosser put handcuffs on defendant and placed him into Blosser's police vehicle.

Kennedy then looked under the passenger seat of the car and retrieved a sawed-off shotgun, which was loaded with one round. Kennedy also recovered four additional shotgun shells. After Kennedy recovered the shotgun, defendant told him that the gun was not his and he did not know about it until Kennedy retrieved it from the car.

II.     Discussion

Defendant moves to suppress the evidence obtained from the search of the Mazda and to suppress the statements made by defendant. Defendant also moves to dismiss Counts 1 and 2 of the Indictment for selective prosecution.

   A.     Motion to suppress

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (internal quotations and citation omitted). A routine traffic

stop is analyzed under the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* "An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Id.* at 1348.

Defendant does not challenge the validity of the initial traffic stop by Kennedy. Defendant, however, does contend that he was illegally seized when Kennedy ordered him to get back into the vehicle.

Every circuit to address the issue of whether it is appropriate for an officer to order a passenger back into a vehicle during a routine traffic stop have found that it is. *See United States v. Sanders*, 510 F.3d 788, 791-92 (8th Cir. 2007) (holding that officer's seizure of vehicle's passenger, by ordering him after he left vehicle during traffic stop to reenter it, was reasonable under Fourth Amendment); *United States v. Williams*, 419 F.3d 1029, 1034 (9th Cir. 2005) (holding that under Fourth Amendment it is reasonable for officer to order passenger back into vehicle); *United States v. Clark*, 337 F.3d 1282, 1288 (11th Cir. 2003) (holding that officer did not violate Fourth Amendment when he ordered passenger to reenter car as means of protecting officer's safety); *United States v. Moorefield*, 111 F.3d 10, 11 (3d Cir. 1997) (holding that officers may constitutionally order passengers of car to remain in vehicle); *see also United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001) (stating in dictum that "during a routine traffic stop, an officer may . . . order the passengers to remain in the vehicle"). In light of the above precedent, and noting Kennedy's testimony that he ordered defendant back into the car for safety reasons, the Court finds that Kennedy's seizure of defendant by ordering him back into the car was reasonable and did not violate the Fourth Amendment.

Defendant next contends that it was improper for Blosser to ask defendant whether there was a gun that went with the shells. "Given the dangers inherent in all traffic stops, we hold that the government's interest in officer safety outweighs a motorist's interest in not being asked about the presence of loaded weapons. This balance tips in the government's favor even when the officer lacks particularized suspicion that the motorist possesses loaded weapons and regardless of whether the officer subjectively fears the motorist." *United States v. Holt*, 264 F.3d 1215, 1226 (10th Cir. 2001). In light of the fact that Blosser had observed shotgun shells in the floorboard of the passenger side of the car, the Court finds that Blosser's questions to defendant regarding the presence of a gun were proper both because Blosser had a particularized suspicion that defendant possessed a loaded weapon and because said questions would fall within the "public safety" exception to the requirement that *Miranda* warnings be given to a suspect before his answers may be admitted into evidence as recognized in *New York v. Quarles*, 467 U.S. 649 (1984). Further, the Court finds that once defendant stated that there was a gun under the passenger seat, Kennedy did not need to obtain a search warrant for the vehicle before retrieving the sawed-off shotgun. *See United States v. Ross*, 456 U.S. 798, 804-09 (1982).

Finally, defendant contends that the statement he made to Kennedy regarding his lack of knowledge of the gun should be suppressed.

> The Fifth Amendment does not bar the admission of volunteered statements which are freely given. If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible.

*United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) (internal citations omitted).

> The issue of voluntariness is determined by the totality of the circumstances, considering the characteristics of the accused including among other things his or her age or lack of education or

4

>intelligence and details of the circumstances like any advice of a person's constitutional rights or the length of detention or prolonged questioning. . . . The test is whether the person's will was overcome, or whether the statement was freely made.

*Id.* (internal citations omitted).

Having heard the evidence presented, the Court finds that defendant's statements were volunteered and were not the result of police interrogation. The evidence is undisputed that prior to defendant making these statements, Kennedy had asked him no questions. Further, considering the totality of the circumstances, the Court finds that defendant's will was not overcome and that his statements were freely made.

Accordingly, the Court finds that defendant's motion to suppress should be denied.

B.  Motion to dismiss

Defendant also moves to dismiss Counts 1 and 2 for selective prosecution. Specifically, defendant asserts that both Marzette and defendant were present in the car and that the government did not pursue any charges against Marzette and selectively prosecuted defendant.

>A defendant claiming selective prosecution must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose. To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted.

*United States v. Deberry*, 430 F.3d 1294, 1299 (10th Cir. 2005) (internal quotations and citations omitted).

It is undisputed that Marzette and defendant have the same racial background. The Court, accordingly, finds that defendant has not demonstrated any selective prosecution in this case.[3] Accordingly, the Court finds that defendant's motion to dismiss should be denied.

III.  Conclusion

For the reasons set forth above, the Court DENIES defendant's Motion to Dismiss and Suppress Evidence [docket no. 27].

**IT IS SO ORDERED this 13th day of August, 2008.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

---

[3] In his motion, defendant also appears to challenge whether there is sufficient evidence to support a finding that defendant possessed the sawed-off shotgun. "Generally, the strength or weakness of the government's case, or sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). Accordingly, the Court finds that if defendant is making such a challenge, it is an inappropriate challenge at this stage of the proceedings.