## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CR-07-288-M |
| | ) | |
| STANLEY DESHAWN VANN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is defendant's Motion to Dismiss and Suppress Evidence Count 3 of Indictment, filed June 16, 2008. On July 15, 2008, the government filed its response. On August 7, 2008, the Court conducted a hearing on the motion to suppress.[1] Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.     Factual Background[2]

On November 18, 2007, at approximately 10:30 a.m., OCPD Officer Scott Wright was on routine patrol near the intersection of Prospect and Madison in Oklahoma City[3] when he heard a very loud noise coming from a car stereo. As Officer Wright turned onto Madison, he observed a Chevrolet Caprice parked in a vacant lot and determined that the loud noise was coming from the Caprice. Officer Wright approached the vehicle and parked approximately twenty-five feet from it. As he exited his police car, Officer Wright saw that the front doors of the Caprice were open, as

---

[1] At the hearing, Officer Scott Wright ("Wright") of the Oklahoma City Police Department ("OCPD"), Officer Chris Shubert ("Shubert") of the OCPD, and Detective Mike Homan of the OCPD testified. The Court finds these witnesses are credible witnesses.

[2] This factual background is based upon the evidence presented at the hearing.

[3] Officer Wright, Officer Shubert, and Detective Homan all testified that this was a high crime area.

well as the trunk, and that a male individual, defendant, appeared to be working on stereo equipment in the trunk.

Officer Wright announced his presence to defendant, and defendant appeared startled, as if he had no idea that Officer Wright was there. Defendant took one step back, turned, and then took another step, and according to Officer Wright, it appeared that defendant was about to flee. Officer Wright grabbed defendant's hand. At this point, Sergeant Snavely arrived on the scene and blocked defendant's path. Officer Wright handcuffed defendant, walked him over to his police car, ran defendant's name, found out there was a federal warrant for defendant's arrest, and placed defendant under arrest.

The Caprice had a paper tag, which had defendant's last name printed on the tag, but the first initial was different from defendant's. Defendant indicated that it was his wife's car. Further, when Officer Wright ran the VIN number on the car, it came back to a different individual. Officer Wright then asked dispatch for an impound number. When defendant heard this, he told Officer Wright that he lived across the street.

Officer Shubert then arrived on the scene to assist with the inventory of the Caprice. Before starting the inventory, Officer Shubert went to the driver's side of the Caprice and saw the back of a handgun sticking out from under the driver's seat. Officer Shubert retrieved the gun and gave it to Officer Wright. Officer Wright ran the gun's serial number, and the gun came back as stolen.

Officer Wright then transported defendant to jail. While on the way to jail, defendant asked what the charges were, and Officer Wright told him about the federal warrant and the possession of the stolen firearm. Defendant then stated that he was innocent of the possession charge because some lady had found the gun in the street and gave it to him.

II.   Discussion

Defendant moves to suppress the evidence obtained from the search of the Caprice and to suppress the statements made by defendant.

To justify a *Terry*[4] stop, "the police officer need have only specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime." *United States v. Griffin*, 7 F.3d 1512, 1516 (10th Cir. 1993). "Reasonable suspicion, analyzed on the totality of the circumstances, requires a minimal level of objective justification which the officers can articulate." *Id.* at 1517 (internal quotations and citations omitted). To determine the reasonableness of an investigative detention, the court makes a dual inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 20 (1968). Further, "[a]n officer's reasonable mistake of fact, as distinguished from a mistake of law, may support the probable cause or reasonable suspicion necessary to justify a [ ] stop." *United States v. DeGasso*, 369 F.3d 1139, 1144 (10th Cir. 2004).

Having heard the evidence presented, the Court finds that the initial stop and detention of defendant was valid under the Fourth Amendment. Specifically, because Officer Wright determined that the loud noise coming from the Caprice was plainly audible from a distance of more than fifty (50) feet, the Court finds that Officer Wright was justified in detaining defendant based upon the violation of Oklahoma City Ordinance § 34-4(5)(b).[5] Additionally, while the Court recognizes that

---

[4]*Terry v. Ohio*, 392 U.S. 1 (1968).

[5]Oklahoma City Ordinance § 34-4(5)(b) provides:
The following acts, among others and not to exclude other such acts, are declared to be excessive or unusual noises in violation of this

it is irrelevant whether Officer Wright may have had other subjective motives for detaining defendant, the Court finds that the investigatory stop and detention was not a ruse by law enforcement to detain defendant.

In *Chimel v. California*, 395 U.S. 752 (1969), the Supreme Court held "that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area." *New York v. Belton*, 453 U.S. 454, 457 (1981). "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. . . . the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Id.* at 460.

Further, in order to show that the impoundment of a defendant's vehicle was reasonable under the Fourth Amendment, the government must show that the impoundment of the vehicle satisfied state or local law or is justified under the public safety exception of *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). *United States v. Rios*, 88 F.3d 867, 870 (10th Cir. 1996).

---

chapter . . . (5) *Radios, television equipment, electronic audio equipment, musical instruments and similar devices.* Operating or permitting the use or operation of any device designed for sound production, amplification, or reproduction, including but not limited to any radio, musical instrument, phonograph, television set, tape recorder, loud speaker, or other similar device such as to produce a noise disturbance:

a. if plainly audible within any dwelling unit which is not the source of the sound; or

b. on public property or on a public right-of-way so as to be plainly audible 50 feet or more from such device, except as authorized by permit.

4

> An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment, designed to effect three purposes: protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger. However, inventory searches are reasonable only if conducted according to standardized procedures. An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory.

*United States v. Haro-Salcedo*, 107 F.3d 769, 772-73 (10th Cir. 1997) (internal citations omitted).

Having heard the evidence presented, the Court finds that the search of the Caprice did not violate the Fourth Amendment. Specifically, the Court finds that the search was proper either as a search incident to lawful arrest and/or as an inventory search prior to impoundment. Officer Wright validly arrested defendant, and according to the above-referenced case law, the officers were entitled to conduct a contemporaneous search of the Caprice, which defendant had been "working" on prior to Officer Wright's arrival. Further, the Court finds that the Caprice was also properly impounded; it was parked in a vacant lot, the first initial on the paper tag was not the same as defendant's, and the VIN number check indicated a completely different person owned the vehicle. Additionally, the OCPD Policy of Operations Manual gives broad discretion to arresting officers to have a vehicle impounded and specifically allows a vehicle to be impounded when the driver is arrested and the officer determines impoundment is needed. The Court also finds the inventory search was accomplished pursuant to a reasonable and standardized procedure and was not simply a fishing expedition by the police. Finally, the Court would note that the gun that was found by Officer Shubert was located in plain sight.

Defendant finally contends that the statements he made to Officer Wright regarding his possession of the gun should be suppressed.

> The Fifth Amendment does not bar the admission of volunteered statements which are freely given.  If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible.

*United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) (internal citations omitted).

> The issue of voluntariness is determined by the totality of the circumstances, considering the characteristics of the accused including among other things his or her age or lack of education or intelligence and details of the circumstances like any advice of a person's constitutional rights or the length of detention or prolonged questioning. . . . The test is whether the person's will was overcome, or whether the statement was freely made.

*Id.* (internal citations omitted).

Having heard the evidence presented, the Court finds that defendant's statements were volunteered and were not the result of police interrogation.  The evidence is undisputed that prior to defendant making these statements, Wright had asked him no questions.  Further, considering the totality of the circumstances, the Court finds that defendant's will was not overcome and that his statements were freely made.

III.     Conclusion

For the reasons set forth above, the Court DENIES defendant's Motion to Dismiss and Suppress Evidence Count 3 of Indictment [docket no. 35].

**IT IS SO ORDERED this 13th day of August, 2008.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE